RUTH ELIN AUERBACH (SBN 104191)
Law Office of Ruth Auerbach
77 Van Ness Ave., Suite 201
San Francisco, CA 94102
Telephone: (415) 673-0560
Facsimile: (415) 673-0562
e-mail: attorneyruth@sbcglobal.net

Attorney for Debtor, Brugnara Properties VI,

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Case No.: 17-30501 DM |
| BRUGNARA PROPERTIES VI, | ) Chapter 11 |
| Debtor. | ) |

# DEBTOR'S DISCLOSURE STATEMENT
### Dated September 20, 2017

This Disclosure Statement is furnished pursuant to Bankruptcy Code Sections 1121 through 1129. Creditors who wish to vote on the proposed plan should review this Disclosure Statement and Plan of Reorganization, complete the ballot furnished herewith, and return the ballot to Ruth Elin Auerbach, Attorney at Law, 77 Van Ness Avenue, Suite 201, San Francisco, CA 94102, telephone number (415) 673-0560; facsimile number (415) 673-0562; e-mail attorneyruth@sbcglobal.net, on or before the date set forth in the Order Approving Disclosure Statement enclosed herewith. The Plan will be confirmed so long as each of the requirements of Section 1129 has been met, to-wit:

DEBTOR'S DISCLOSURE STATEMENT     - 1

A class of creditors will be deemed to have accepted the Plan if the plan is accepted by creditors that hold at least two-thirds in amount and one-half in number of the allowed claims of such class held by creditors.

THE DEBTOR URGES YOU TO READ THIS DISCLOSURE STATEMENT AND PLAN CAREFULLY.

## I. RULES OF CONSTRUCTION, INTERPRETATION AND TIME

In the event of any inconsistency between this Plan and the Disclosure Statement, the provisions of the Plan, and any Order Confirming the Plan are controlling. The rules of construction set forth in Section 102 of the Bankruptcy Code shall apply to the Plan and Disclosure Statement. In computing any period of time prescribed or allowed by the Plan, the provisions of Rule 9006(a) of the Federal Rules of Bankruptcy Procedure shall apply.

## II. APPLICABLE LAW

Except to the extent that Federal Law applies or the Plan specifically provides otherwise, the effect, implementation and enforcement of this Plan shall be governed by California Law.

## III. BACKGROUND

The Debtor is the owner of real property commonly described as 224 Sea Cliff Avenue, San Francisco, California ("The Property"). The property was acquired by the Debtor in 2002. The property was acquired with a loan from Vestin taken out by the Debtor. Vestin was refinanced out with a 1st TD loan from World Savings Bank (acquired by Wachovia Bank whom was acquired by Wells Fargo Bank). The Property is a single family residence and is the home of the Debtor's Principal, Kay Brugnara and her family.

The Debtor acquired the property in 2002 for $8,000,000 and invested approximately $2,000,000 in capital improvements. The Property was appraised in 2016 at a value of $21,000,000. The Debtor believes that the value of the property has increased since that appraisal and is now worth at least $25,000,000.

The Debtor has successfully operated and managed the Property through cultivating its rapidly appreciating value. The property has more than doubled in value since its purchase, and the value is expected to increase in a similar manner over the next decade due to its extremely desirable and rare location. The Property is an oceanfront cliff house with a private beach and a cove (the only private beach/cove in San Francisco) with a direct view of the Golden Gate Bridge. There are only seven homes on the cliff and they range in value from $25,000,000 to $40,000,000.

The secured debts against the Debtor total approximately $10,000,000, well below a 50% debt load. The Property has never generated a cash flow, a fact known to secured creditors at the time they made the loans. The Debtor has functioned efficiently for 17 years covering its operating expenses with cash infusions from its officers and refinancing the property.

Most recently, the Debtor paid off in full its prior subordinate lenders in 2012 and 2013. The lenders were paid off in full from cash infusions from the President of the Debtor who received the cash from the sale of fine art.

Kay Brugnara has been President of the Debtor since 2010 and has arranged for the prior subordinate lenders to be paid as promised. The Debtor was required to file this Chapter 11 case because of promises and contracts breached by its two subordinate lenders, PSG and Dakota Note. Additionally Dakota Note violated its promises in written declarations filed with this Court to fund certain money to the Debtor which they did not do as promised. The Debtor

is pursuing litigation against the lenders for their breaches, to stop the illegal foreclosure and protect its $20M of equity. Kay Brugnara has fulfilled all promises to this Court in past proceedings, always paying off the subordinate lenders as promised as a condition of the dismissal(s). It was lender Dakota Note's failure to keep the promises made in its declarations to this Court that it would fund nearly $1M to the Debtor, together with the failure on the part of PSG Capital to fund the loan it had approved and promised to the Debtor that caused the necessity of this Chapter 11 filing.

## IV. SUMMARY OF THE PLAN

This summary describes the Plan of Reorganization of the Debtor. Creditors should refer to the Plan itself for specific terms and conditions.

### A. DEBTOR'S LIABILITIES

1. <u>Expenses of Administration</u>:

The Debtor estimates that the expenses of administration for this Chapter 11 case will total about $45,000 for attorneys' fees and expenses.

The Debtor does not believe that there are any other administrative expenses which will be due.

2. <u>Pre-Petition Priority Tax Debt</u>:

The debtor has no pre-petition priority tax debts.

3. <u>Secured Claims</u>: The following constitute liens against the Property:

  a. Wells Fargo Bank: Wells Fargo Bank ("WFB") has a first position deed of trust on the Debtor's real property located at 224 Sea Cliff Avenue, San Francisco, CA ("The Debtor's Real Property"), in the amount of $5,917,486.26;

  b. Dakota Note, LLC: Dakota Note, LLC ("Dakota") has a second priority deed of trust on the Debtor's real property in the amount of $2,400,000. Debtor disputes the validity of the Dakota liens as detailed in the adversarial motion/lawsuit;

c. Dakota Note, LLC: Dakota also has a third priority deed of trust against the Debtor's real property in the amount of $1,200,000; Debtor disputes the validity of the Dakota liens as detailed in the adversarial motion/lawsuit;

d. PSG Capital Partners, Inc.: PSG Capital Partners, Inc. ("PSG") has a fourth priority deed of trust on the Debtor's real property in the amount of $1,500,000; this lien is disputed by the Debtor as detailed in the adversarial proceeding/lawsuit;

e. California Home Loans: California Home Loans ("CHL") has a fifth priority deed of trust on the Debtor's real property in the amount of $315,000; CHL's 5th deed of trust is disputed in its entirety (i.e., does NOT "have" a deed of trust) as no pecuniary benefit was received by the Debtor;

f. Franchise Tax Board: The Franchise Tax Board ("FTB") has a Nominee Lien against the Debtor's property in the approximate amount of $6,200,000 for taxes allegedly owed by the Debtor's principal's husband Luke Brugnara. This amount was based on an erroneous IRS assessment of $45,000,000. That amount was reduced in Federal District Court by Judge William Alsup on June 1, 2010 (cr:08-0222WHA) to $300,000 and thus the amount of taxes actually owed by Luke Brugnara to the State should be around $16,000. The Debtor disputes the validity of this lien.

g. Internal Revenue Service: The Internal Revenue Service ("IRS") has a Nominee Lien against the Debtor's property in the approximate amount of $1,200,000 for income taxes allegedly owed by the Debtor's husband Luke Brugnara. The actual amount of the tax liability is $300,000; the remainder represents interest and penalties. The Debtor disputes the validity of this lien.

4. Unsecured Claims: The unsecured claims total $4,500.

B. TREATMENT OF CLAIMS

Class 1 - Secured Claim of Wells Fargo Bank: The Debtor will make the payments due to WFB pursuant to the terms of its Note and Deed of Trust. Class 1 is not impaired under this Plan.

Class 2 – Secured Claim of Dakota Note 2nd: Class 2 is impaired. The Maturity Date of this loan will be extended until May 31, 2022. Interest will accrue at the rate of prime plus one

percent per annum (4% as of the date of this Plan); until the Maturity Date as per the existing terms of these loan documents (i.e., "No payments of principal or interest shall be made until the Maturity Date."). This is to reiterate that NO payments of debt were ever required under these two loans by the Debtor.

Class 3 – Secured Claim of Dakota Note 3rd: Class 3 is impaired. The Maturity Date of this loan will be extended until May 31, 2022. Interest will accrue at the rate of Prime plus one percent per annum (4% as of the Date of this Plan); until the Maturity Date as per the existing terms of these loan documents (i.e., "No payments of principal or interest shall be made until the Maturity Date."). This is to reiterate that NO payments of debt were ever required under these two loans by the Debtor.

Class 4 – Secured Claim of PSG Capital Partners: Class 4 is impaired. The Maturity Date of this loan will be extended until May 31 2022. Interest will accrue at the rate of prime plus one percent per annum (4% as of the date of the Plan); until the Maturity Date as per the existing terms of these loan documents (i.e., "No payments of principal or interest shall be made until the Maturity Date."). This is to reiterate that NO payments of debt were ever required under this loan by the Debtor.

Class 5 – Secured Claim of California Home Loans: Class 5 is impaired. The Maturity Date of this loan will be extended until May 31, 2022. Interest will accrue at the rate of prime plus one percent per annum (4% as of the date of the Plan); until the Maturity Date as per the existing terms of these loan documents (i.e., "No payments of principal or interest shall be made

until the Maturity Date.). This is to reiterate that NO payments of debt were ever required under this loan by the Debtor.

Class 6 – Secured Claim of Franchise Tax Board: Class 6 is impaired. The Debtor will file an adversary proceeding to seeking a determination that the lien is invalid as to the Debtor. The Debtor further asserts that the amount of the claim is incorrect, as it was based upon an IRS claim that $45M was due. That amount of the IRS tax debt was reduced by the Federal Court to $300,000 and therefore the State Taxes owing by Luke Brugnara individually, which cover the same period as the IRS claim, should be similarly reduced to approximately $16,000. If the Bankruptcy Court upholds the Lien, the allowed secured claim will be paid in full by May 31, 2022

Class 7 – Secured Claim of Internal Revenue Service: Class 7 is impaired. The Debtor will file an adversary proceeding to determine the validity and amount of any IRS lien, as the Debtor does not believe that the IRS can show the elements necessary for a nominee lien to be placed against this property. If the Lien is determined to be valid, the claim will be paid in full by May 31, 2022.

Class 8 - Unsecured Claims: Class 8 is impaired. The Debtor's unsecured claims total $4500.00. Those claims would be paid in full within 60 days of the Effective Date of the Plan through a cash infusion from the Debtor's principal.

## V. RETENTION OF OWNERSHIP

KAY BRUGNARA will retain her ownership interest in the business. No dividends shall be paid to any owner until all payments to be made to non-insider creditors under this Plan have been completed.

## VI. TAX CONSEQUENCES OF PLAN

Creditors should confer with their specific tax advisors regarding the specific consequences of this Plan to that Creditor. There may be tax liability incurred in cases where creditors have received tax benefits for bad-debt write-offs related to the obligations being paid under this Plan.

## VII. LIQUIDATION ANALYSIS

### COMPARISON OF PLAN WITH CHAPTER 7 TREATMENT

If the Debtor is unable to confirm a Plan, then this Chapter 11 case would likely be either dismissed or converted to a Chapter 7 liquidation. In the latter event, a Trustee in Bankruptcy would be appointed to administer the estate and liquidate the assets of the Debtor. If the property were sold, there would be significant Capital Gains taxes in the approximate amount of between $6,000,000 to $8,000,000. This would be highly prejudicial to BPVI as it would consume most of the equity of BPVI. Moreover, this is the ONLY asset of BPVI, and BPVI, a mature 17 year old corporate entity, would be forced to no longer exist. The remaining liquidation proceeds would be utilized to pay the secured creditors, the expenses of administration of the Chapter 7 case (trustee fees and expenses and fees and expense for the trustee's professionals), the expenses of administration of the superseded Chapter 11 case, and any priority claims which may exist. Whether there are sufficient funds to pay all creditors would depend on to what extent the tax liens are determined to be proper nominee liens against the Property. If the liens are determined to be proper nominee liens, after payment of capital gains taxes and costs of sale, there would likely be no money left to pay unsecured claims.

## VI. FEASIBILITY

The Debtor's property is worth in excess of $25,000,000, while liens against it total less than $10,000,000 exclusive of the nominee liens, leaving an equity cushion of at least 50%.

The taxing authorities' nominee liens against this property should be avoided. The Debtor is a corporation duly organized and existing under California law. The property was purchased by the corporation with funds borrowed by the Debtor. The property was never owned by the Brugnaras individually. All loans that have been repaid were repaid by the corporation. The Superior Court of California in an action involving a claim of alter ego by a creditor of the Brugnaras held that the corporation was not an alter ego of the Brugnaras (a copy of the Court's ruling is attached hereto as Exhibit "1").

The source of the funds to repay the secured claims will come from either a refinance of the property or from cash infusion from the owner's family members, including the sale of fine art by the owner's son, Luke Brugnara II, but also from cash infusion by the owner's husband, Luke Brugnara, who has been successfully raising capital for all Brugnara Property entities for the past 25 years. In Mr. Brugnara's Federal Court tax case, WHA-0222, the IRS testified that Luke Brugnara made between $1M and $103M per year over the past 20 years. When Mr. Brugnara returned from La Tuna prison in 2012 he arranged for the payoff of an $11M second trust deed on Sea Cliff from PEM Group, and also successfully paid off that loan in 2013. Mr. Brugnara is scheduled to be released from his current incarceration within the next year, and will be able to raise the money needed to make the payments required under this Plan. Luke Brugnara will be able to refinance the existing to the subordinate lenders as he has done successfully on much greater subordinate debt on Sea Cliff for over 15 years. Luke Brugnara has borrowed over $1.3 Billion from his private lenders which loans have been repaid.

Each of the subordinate loans against the Property were from the beginning equity-based, with no monthly debt service payments due. The Plan proposes the same treatment. The creditors are not losing any ground, as the property is appreciating faster than the interest is accruing. The property was purchased in 2002 for $8,000,000. In 2010 it was appraised at

$14,000,000, in 2014 it was appraised at $16,500,000 and 2016 it was appraised at $20,000,000-$21,000,000 (See Appraisal Report, attached hereto as Exhibit "2"). The property has been appreciating at the rate of at least $2,000,000/year. The interest accruing on all notes combined is less than $1,000,000, and therefore the protective equity securing the subordinate debt is actually increasing by over $1,000,000/year.

## VII. CREDITOR'S REMEDIES

Should the Debtor fail to comply with the terms of this Plan, creditors shall have all their rights and remedies as provided by the Bankruptcy Code, including, but not limited to, the filing of a motion for conversion of the case to Chapter 7 or the appointment of a Trustee. Secured creditors would be able to seek relief from the Court to permit foreclosure of their collateral.

## IX. CONCLUSION

The Debtor respectfully requests that the Creditors give favorable consideration to the Debtor's Plan of Reorganization.

Dated: September 20, 2017            BRUGNARA PROPERTIES VI

By:_/s/ Kay Brugnara_____
KAY BRUGNARA, President

DEBTOR'S DISCLOSURE STATEMENT - 10
Case: 17-30501   Doc# 59   Filed: 09/20/17   Entered: 09/20/17 22:30:56   Page 10 of 10