RUTH ELIN AUERBACH, SBN 104191
Attorney at Law
77 Van Ness Avenue, Suite 201
San Francisco, CA 94102
Tel: (415) 673-0560
Fax: (415) 673-0562
Email: attorneyruth@sbcglobal.net

Attorney for Debtor

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| In re: | ) | Case No.: 17-30501 |
| | ) | |
| BRUGNARA PROPERTIES VI, | ) | CHAPTER 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**BRUGNARA PROPERTIES VI'S COMBINED PLAN AND DISCLOSURE
STATEMENT
Dated March 28, 2018**

**INTRODUCTION**

This is Debtor's Combined Chapter 11 Plan of Reorganization and Disclosure

Statement (the Plan). The Plan identifies each known creditor by name and describes how

each claim will be treated if the Plan is confirmed.

Treatment of Secured Creditors is Contained in Paragraphs III. Part 1 contains the

treatment of non-tax claims; Part 2 contains the treatment of secured tax claims. Treatment

of Unsecured Creditors is contained in Paragraph IV of the Plan. Unsecured creditors will

CHAPTER 11 COMBINED PLAN & DISCLOSURE STATEMENT

receive 100% of their allowed claims in monthly payments over 2 months. Taxes and other priority claims would be paid in full, as shown in Part 3.

Most creditors (those in impaired classes) are entitled to vote on confirmation of the Plan. Completed ballots must be received by Debtor's counsel, and objections to confirmation must be filed and served, no later than _____. The court will hold a hearing on confirmation of the Plan on _____, 2018 at _____ _.M.

Attached to the Plan are exhibits containing financial information that may help you decide how to vote and whether to object to confirmation. Exhibit "1" is the Loan Commitment the Debtor has obtained from FMC Lending, Inc. Exhibit "2" is the Debtor's recent appraisal of the Property. Exhibit "3" is the Agreement between the Debtor and Kay Brugnara pursuant to which she acts as President of the Debtor.

Whether the Plan is confirmed is subject to complex legal rules that cannot be fully described here. You are strongly encouraged to read the Plan carefully and to consult an attorney to help you determine how to vote and whether to object to confirmation of the Plan.

If the Plan is confirmed, the payments promised in the Plan constitute new contractual obligations that replace the Debtor's pre-confirmation debts. Creditors may not seize their collateral or enforce their pre-confirmation debts so long as Debtor performs all obligations under the Plan. If Debtor defaults in performing Plan obligations, any creditor can file a motion to have the case dismissed or converted to a Chapter 7 liquidation, or enforce their non-bankruptcy rights. Debtor will be discharged from all pre-confirmation debts (with certain exceptions) if Debtor makes all Plan payments. Enforcement of the Plan, discharge of the Debtor, and creditors' remedies if Debtor defaults are described in detail in Part XI of the Plan.

CHAPTER 11 COMBINED PLAN & DISCLOSURE STATEMENT

# I. EVENTS LEADING UP TO THE FILING

The Debtor is the owner of real property commonly described as 224 Sea Cliff Avenue, San Francisco, California ("The Property"). The property was acquired by the Debtor in 2002. The property was acquired with a loan from Vestin taken out by the Debtor. Vestin was refinanced out with a 1st TD loan from World Savings Bank (acquired by Wachovia Bank whom was acquired by Wells Fargo Bank). The Property is a single family residence and is the home of the Debtor's Principal, Kay Brugnara and her family. The Debtor acquired the property in 2002 for $8,000,000 and invested approximately $2,000,000 in capital improvements. The Property was appraised in 2016 at a value of approximately $19,000,000. The Debtor received an updated appraisal in November 2017 showing a value of $20,260,000.

The Debtor has successfully operated and managed the Property through cultivating its rapidly appreciating value. The property has more than doubled in value since its purchase, and the value is expected to increase in a similar manner over the next decade due to its extremely desirable and rare location. The Property is an oceanfront cliff house with a private beach and a cove (the only private beach/cove in San Francisco) with a direct view of the Golden Gate Bridge. There are only seven homes on the cliff and they range in value from $25,000,000 to $40,000,000.

The mortgage debts against the Debtor total approximately $11,000,000. The Property has never generated a cash flow, a fact known to secured creditors at the time they made the loans. The Debtor has functioned efficiently for 17 years covering its operating expenses with cash infusions from its officers and refinancing the property.

CHAPTER 11 COMBINED PLAN & DISCLOSURE STATEMENT

3

Most recently, the Debtor paid off in full its prior subordinate lenders in 2012 and 2013. The lenders were paid off in full from cash infusions from the President of the Debtor who received the cash from the sale of fine art.

Kay Brugnara has been President of the Debtor since 2010 and has arranged for the prior subordinate lenders to be paid as promised. The Debtor was required to file this Chapter 11 case because of promises and contracts breached by its two subordinate lenders, PSG and Dakota Note. Additionally, Dakota Note violated its promises in written declarations filed with this Court to fund certain money to the Debtor which they did not do as promised. The Debtor is pursuing litigation against the lenders for their breaches, to stop the illegal foreclosure and protect its millions of dollars of equity. Kay Brugnara has fulfilled all promises to this Court in past proceedings, always paying off the subordinate lenders as promised as a condition of the dismissal(s). It was lender Dakota Note's failure to keep the promises made in its declarations to this Court that it would fund nearly $1M to the Debtor, together with the failure on the part of PSG Capital to fund the loan it had approved and promised to the Debtor that caused the necessity of this Chapter 11 filing.

## II. SIGNIFICANT EVENTS SINCE THE FILING

On January 8, 2018, the Court appointed a Chapter 11 Trustee in this case. Since then, the Debtor has been in contact with potential lenders to find a loan that would allow the Debtor to refinance the property, pay creditors and retain the Property. The Debtor has initiated adversary proceedings against Dakota Note and against PSG Capital Partners for damages due to their failure to provide the promised pre-petition funding to the Debtor, and has also filed an adversary proceeding against the IRS and Franchise Tax Board to seek to have the nominee tax liens removed. Those actions have been put on hold since the appointment of the Chapter 11 Trustee.

CHAPTER 11 COMBINED PLAN & DISCLOSURE STATEMENT

The Chapter 11 Trustee has recommended that the case be converted to Chapter 7. The Debtor has opposed the recommendation on the basis that it has now obtained a loan commitment for a $14,000,000 new first deed of trust which it believes will provide sufficient funds to pay off all non-tax liens, with enough money left over to pay the IRS should the Court not find that removal of the lien is appropriate. The Franchise Tax Board liens are now junior in priority to the other liens, and would remain junior to the new loan. Since the new loan is expected to pay off approximately the same amount as the current liens senior to the FTB's lien, the FTB would not be prejudiced by the new replacement loan, and, in fact would be in a better position, as the interest payments on the new loan would be pre-paid, insuring that there would not be a payment default within the two years.

## II. DESIGNATION OF CLASSES

The Plan contemplates the following classes of creditors:

Class 1(a) – the Claim of Wells Fargo Bank, who holds a first priority deed of trust against the Property recorded April 6, 2007, in the approximate amount of $5,900,000;

Class 1(b) – the Claim of Natural Software Systems, who holds a second priority deed of trust against the Property recorded January 25, 2013, in the approximate amount of $2,400,000;

Class 1(c) – the Claim of Dakota Note, LLC, who holds a third priority deed of trust against the Property recorded July 21, 2015 in the approximate amount of $1,500,000;

Class 1(d) – the Claim of PSG Capital Partners, who holds a fourth priority deed of trust against the Property recorded November 16, 2016 in the approximate amount of $1,500,000;

Class 1(e) – the Claim of California Home Loans, who holds a fifth priority deed of trust against the Property recorded December 1, 2016 in the approximate amount of $300,000;

CHAPTER 11 COMBINED PLAN & DISCLOSURE STATEMENT

Case: 17-30501    Doc# 150    Filed: 03/28/18    Entered: 03/28/18 22:30:17    Page 5 of 40

Class 1(f) – the Claim of the Internal Revenue Service ("IRS") who claims a Nominee Tax Lien against the Debtor as nominee of Kay McAvoy, aka Katherine Brugnara recorded August 21, 2014 in the amount of $369,998.03;

Class 1(g) – the Claim of the Internal Revenue Service ("IRS") who claims a Nominee Tax Lien against the Debtor as nominee of Luke D. Brugnara record August 21, 2014 in the amount of $866,097.60;

Class 1(h) – the Claim of the Franchise Tax Board ("FTB") who claims a Nominee Tax Lien against the Debtor as nominee of Luke D. Brugnara recorded January 16, 2017 in the amount of $6,158,657.63;

Class 1(i) – the Claim of the Franchise Tax Board ("FTB") who claims a Nominee Tax Lien against the Debtor as nominee of Katherine Brugnara, aka Kay McAvoy in the amount of $189,930.12;

Class 2(a) – General Unsecured Creditors – these creditors are owed approximately $9,047.

## III. TREATMENT OF SECURED CREDITORS

### A. Treatment of Classes 1(a) through 1(e)

The Debtor has received a $14,000,000 loan commitment from FMC Lending, Inc., a true and correct copy of which is attached hereto as Exhibit "1." The loan will close within 28 days of the Effective Date of this Plan. These creditors will be paid in full, including accrued interest and other charges allowed under the creditor's loan documents, directly from the escrow prior to closing. If any amount claimed by a creditor is objected to, that amount will be held in escrow and the Debtor shall promptly seek to have the disputed item adjudicated by the Bankruptcy Court. Any amount(s) deemed allowed will be paid in full immediately upon entry of an Order authorizing and/or directing such payment.

CHAPTER 11 COMBINED PLAN & DISCLOSURE STATEMENT

6

Creditors in these classes may not repossess or dispose of their collateral so long as Debtor is not in material default under the Plan (defined in Part 6(c)). **These secured claims are impaired and are entitled to vote on confirmation of the Plan.**

**B.  Treatment of Disputed Nominee Tax Liens.**

**Class 1(f) and Class 1(g) claims of the  Internal Revenue Service ("IRS").**  The Debtor has filed an adversary proceeding against the IRS for a determination that the nominee tax liens are not valid against the Debtor or the Debtor's Property.  Pending a resolution of that Adversary Proceeding, the net proceeds of the Debtor's refinance referred to above will remain in escrow or in another blocked account and the IRS liens will attach to those proceeds.  Upon the final determination as to the validity of the liens, the Debtor will pay to the IRS such amounts as are deemed proper, if any.

**Class 1(h) and 1(i)  Claims of the Franchise Tax Board ("FTB"):**  The Debtor has filed an adversary proceeding against the FTB seeking a court determination that the nominee liens are not valid against the Debtor or the Debtor's property.   Pending a resolution of that Adversary Proceeding, the net proceeds of the Debtor's refinance referred to above will remain in escrow or in another blocked account and the FTB liens will attach to those proceeds.  Upon the final determination as to the validity of the liens, the Debtor will pay to the FTB such amounts as are deemed proper, if any.  Creditors in these classes may not repossess or dispose of their collateral so long as Debtor is not in material default under the Plan. **These secured claims are impaired and are entitled to vote on confirmation of the Plan.**

### IV. TREATMENT OF UNSECURED CLAIMS

**Class 2(a)  General Unsecured Claims**

The following creditors have asserted unsecured claims against the Debtor:

CHAPTER 11 COMBINED PLAN & DISCLOSURE STATEMENT

| Name of Creditor | Amount of Claim | Disputed Y/N | Amount to be Paid | [Monthly] [Quarterly] Payment |
|---|---|---|---|---|
| IRS | 300.00 | Y | Tbd | tbd |
| FTB | 4247.00 | N | 4247.00 | 2123.50 |
| Ali Sharhan | 2000.00 | N | 2000.00 | 1000.00 |
| Darren Bruey | 2500.00 | N | 2500.00 | 1250.00 |

Creditors will receive 100 percent (100%) of their allowed claim in 2 equal monthly installments, the first payment due on the Effective Date and the second payment due 30 days thereafter.  The funds to pay these creditors will come from an infusion of cash from the Debtor's principal or her family members.  Creditors in this class may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(c)).  **This class is impaired and is entitled to vote on confirmation of the Plan.**  Debtor has indicated above whether or not a claim is disputed.

## V.  TREATMENT OF PRIORITY AND ADMINISTRATIVE CLAIMS

**A.  Professional Fees**

The Debtor estimates that there will be the following administrative expense claims herein:

1.  Debtor's attorney, RUTH ELIN AUERBACH, whose fees are estimated to be $50,000. The majority of these fees are covered by the pre-petition retainer.  To the extent any additional fees are owing, the Debtor will pay such fees from an infusion of capital from the Debtor's principal or her relatives on the later of (1) the date of the order approving such fees or (2) the Effective Date of the Plan.

2.  Chapter 11 Trustee Fees:  These are the fees owed to Janina Hoskins, the Chapter 11 Trustee appointed by the Court.  The Debtor estimates these fees to be $20,000.  The

Debtor will pay such fees from the proceeds of the $14,000,000 loan or from an infusion of capital from the Debtor's principal or her relatives on the later of (1) the date of the order approving such fees or (2) the Effective Date of the Plan.

3. Chapter 11 Trustee's Attorneys: These are the fees owed to Michael Isaacs, and Dentons LP, the attorney for the Chapter 11 Trustee. The Debtor estimates these fees to be $25,000. The Debtor will pay such fees from the proceeds of the $14,000,000 loan or an infusion of capital from the Debtor's principal or her relatives on the later of (1) the date of the order approving such fees or (2) the Effective Date of the Plan.

4. Chapter 11 Accountant's Fees: These are the fees owed to Bachecki, Crom & Co., LLP, the accountants for the Chapter 11 Trustee. The Debtor estimates these fees to be $5,000. The Debtor will pay such fees from the proceeds of the $14,000,000 loan, or from an infusion of capital from the Debtor's principal or her relatives on the later of (1) the date of the order approving such fees or (2) the Effective Date of the Plan.

Professionals may not take collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(c)). **Estate professionals are not entitled to vote on confirmation of the Plan.**

**B. Other Administrative Expenses**

The Debtor does not believe it has any other administrative expense claims. If there are any, the Debtor will pay other allowed claims entitled to priority under section 503(b) in full on the Effective Date; except expenses incurred in the ordinary course of Debtor's business or financial affairs, which shall be paid when normally due and payable (these creditors are not listed below). All fees payable to the United States Trustee as of confirmation will be paid on the Effective Date; post-confirmation fees to the United States Trustee will be paid when due.

CHAPTER 11 COMBINED PLAN & DISCLOSURE STATEMENT

9

Administrative Creditors may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(c)). **Administrative claimants are not entitled to vote on confirmation of the Plan.**

**C. Priority Tax Claims**

The only priority tax claim filed was by the IRS in the amount of $100. This claim will be paid in full with interest at the rate of 4% on the Effective Date.

Priority tax creditors may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(c)). **Priority tax claimants are not entitled to vote on confirmation of the Plan.**

## VI. EXECUTORY CONTRACTS

The following executory contracts were in existence at the time of the filing of this Chapter 11 case:

**1. Agreement with Kay Brugnara:** On January 2, 2010, the Debtor entered into an agreement with Kay Brugnara, pursuant to which Ms. Brugnara would act as President, Secretary and sole shareholder of the Debtor. In lieu of compensation in the amount of $200,000, Ms. Brugnara and her family would be permitted to live in the Property at 224 Sea Cliff Avenue, San Francisco, California rent free for a period of ten (10) years. A copy of the Agreement is attached hereto.

**Treatment of Executory Contract with Ms. Brugnara:** The Debtor will assume this Contract.

**2. Listing Agreement with Mark Levinson:** Prior to the commencement of this case, the Debtor had entered into a real estate listing agreement with Mark Levinson. The Agreement terminated on May 10 , 2017, prior to the commencement of this case, and the

Case: 17-30501    Doc# 150    Filed: 03/28/18    Entered: 03/28/18 22:30:17    Page 10 of
40

Debtor believes that it is therefore not an executory contract. It is listed here out of an abundance of caution as Mr. Levinson filed a notice of the agreement with this Court.

**Treatment of Listing Agreement:** To the extent that the agreement may be construed as an executory contract, the Debtor rejects this contract.

## VII. MEANS FOR IMPLEMENTING THE PLAN/FEASIBILITY

The Debtor has obtained a commitment from FMC Lending, Inc. for a loan in the amount of $14,000,000 secured by a first priority lien against the Debtor's property at 224 Sea Cliff Avenue, San Francisco, California. The loan would be funded within 15 of the Effective Date in order to provide for the payment to creditors as outlined above. The lien would take priority over the Franchise Tax Board Liens, whose nominee tax liens will remain on the Property until such time as the Court deems them removed. From the loan proceeds the following payments (amounts are approximate and will depend on demands in escrow) would be made on the effective date:

| | |
|---|---|
| Closing Costs | 3,550 |
| Loan Fee | 280,000 |
| 6 months interest payments | 779,098 |
| Wells Fargo Bank | 5,900,000 |
| Natural Software | 2,400,000 |
| Dakota Note | 1,500,000 |
| PSG Capital Funding | 1,500,000 |
| Cal Home Loans | 300,000 |

The remaining funds would be retained in escrow pending a resolution of the litigation involving the nominee tax claims. If the remaining proceeds are insufficient to pay allowed tax liens, the Debtor will sell the Property or will pay the tax claims with an infusion of cash from the Debtor's principal. The infusion of cash will come from a loan to the Debtor's principal from her son through the sale of art. The sale or infusion of cash

CHAPTER 11 COMBINED PLAN & DISCLOSURE STATEMENT

11

shall take place within 180 days of the final determination of the amount of any valid tax liens.

## VIII. LIQUIDATION ANALYSIS

The Debtor's property consists of the following:

Real Property at 224 Sea Cliff Ave.                    $20,260,000
Cash

If this case were converted to Chapter 7, whether the Trustee would attempt to sell the property would depend on whether the Trustee determined there were any equity in the property for the benefit of creditors. This in turn would depend on to what extent the Nominee Tax Liens are determined to be valid.

As described above, the liens of record against the Debtor's property as of the date of the filing of this case were:

| Lienholder | Date of Lien | Amount (Est.) |
|---|---|---|
| Wells Fargo Bank | 4/6/2007 | 5,900,000 |
| Natural Software Systems, Inc. | 6/25/2013 | 2,400,000 |
| Dakota Note | 7/9/2015 | 1,200,000 |
| PSG Capital Funding | 11/16/2016 | 1,500,000 |
| Cal. Home Loans | 12/1/2016 | 315,000 |
| IRS Nominee Liens vs. Luke | 8/21/2014 | 1,500,000 |
| IRS Nominee Liens vs. Kay | 8/21/2014 | 400,000 |
| FTB Nominee Liens vs. Kay | 1/26/2017 | 200,000 |
| FTB Nominee Liens vs. Luke | 1/26/2017 | 6,000,000 |
| | | $19,415,000 |

The Debtor strongly contests the validity of the Nominee Tax liens and particularly the amount of the FTB liens. The Debtor believes that the FTB Liens were based upon IRS assessments that were later significantly reduced – from $105M to approximately $1.4M. The state taxes owing should have been similarly reduced but have not been.

CHAPTER 11 COMBINED PLAN & DISCLOSURE STATEMENT

If the tax liens remain against the property in their current amounts, there would be no distribution available to unsecured creditors. If the tax liens are avoided, there would be money to pay the unsecured creditors, but not until the litigation had been resolved which could take more than a year:

| | |
|---|---:|
| Sale Price | $20,260,000 |
| Less Costs of Sale | -1,600,000 |
| Less Capital Gains taxes | -2,500,000 |
| | 15,900,000 |
| Less Non-Tax Liens | -11,600,000 |
| | 4,300,000 |
| Less Chapter 7 Trustee Fees | 620,000 |
| Less Chapter 7 Administrative exp. | 250,000* |
| Less Chapter 11 Administrative exp. | 50,000 |
| | $3,540,000 |

*This includes Trustee's statutory fees of approximately $150,000 plus legal and accounting fees.

## IX. EFFECTS OF CONFIRMATION

(a) **Discharge**. The Debtor is a corporation and is not entitled to a discharge.

(b) **Vesting of Property**. On the Effective Date, all property of the estate and interests of the Debtor will vest in the reorganized Debtor pursuant to § 1141(b) of the Bankruptcy Code free and clear of all claims and interests except as provided in this Plan, subject to revesting upon conversion to Chapter 7 as provided in Part IX(f) below.

(c) **Plan Creates New Obligations**. Except as provided in Part IX(d) and (e), the obligations to creditors that Debtor undertakes in the confirmed Plan replace those obligations to creditors that existed prior to the Effective Date of the Plan. Debtor's obligations under the confirmed Plan constitute binding contractual promises that, if not satisfied through performance of the Plan, create a basis for an action for breach of contract under California law. To the extent a creditor retains a lien under the Plan, that creditor retains all rights provided by such lien under applicable non-Bankruptcy law.

CHAPTER 11 COMBINED PLAN & DISCLOSURE STATEMENT

## X. REMEDIES IF DEBTOR DEFAULTS IN PERFORMANCE UNDER THE PLAN

**(a) Creditor Action Restrained**.  The confirmed Plan is binding on every creditor whose claims are provided for in the Plan.  Therefore, even though the automatic stay terminates on the Effective Date with respect to secured claims, no creditor may take any action to enforce either the pre-confirmation obligation or the obligation due under the Plan, so long as Debtor is not in material default under the Plan.

**(b) Obligations to Each Class Separate**.  Debtor's obligations under the Plan are separate with respect to each class of creditors.  Default in performance of an obligation due to members of one class shall not by itself constitute a default with respect to members of other classes.  For purposes of this Part VII, the holders of all administrative claims shall be considered to be a single class, the holders of all priority claims shall be considered to be a single class, and each non-debtor party to an assumed executory contract or lease shall be considered to be a separate class.

**(c) Material Default Defined**.  If Debtor fails to make any payment, or to perform any other obligation required under the Plan, for more than 10 days after the time specified in the Plan for such payment or other performance, any member of a class affected by the default may serve upon Debtor and Debtor's attorney (if any) a written notice of Debtor's default.  If Debtor fails within 30 days after the date of service of the notice of default either: (i) to cure the default; (ii) to obtain from the court an extension of time to cure the default; or (iii) to obtain from the court a determination that no default occurred, then Debtor is in Material Default under the Plan to all the members of the affected class.

**(d) Remedies Upon Material Default**.  Upon Material Default, any member of a class affected by the default: (i) may file and serve a motion to dismiss the case or to convert the case to Chapter 7; or (ii) without further order of the court has relief from stay to the extent

Case: 17-30501    Doc# 150    Filed: 03/28/18    Entered: 03/28/18 22:30:17    Page 14 of 40

necessary, and may pursue its lawful non-bankruptcy remedies to enforce and collect Debtor's pre-confirmation obligations.

**(e) <u>Claims not Affected by Plan</u>**.  Upon confirmation of the Plan, any creditor whose claims are left unimpaired under the Plan may, notwithstanding paragraphs (a), (b), (c), and (d) above, immediately exercise all of its contractual, legal, and equitable rights, except rights based on default of the type that need not be cured under section 1124(2)(A) and (D).

**(f) <u>Effect of Conversion to Chapter 7</u>**.  If the case is at any time converted to one under Chapter 7, property of the Debtor shall vest in the Chapter 7 bankruptcy estate.

**(g) <u>Retention of Jurisdiction</u>**.  The bankruptcy court may exercise jurisdiction over proceedings concerning: (i) whether Debtor is in Material Default of any Plan obligation; (ii) whether the time for performing any Plan obligation should be extended; (iii) adversary proceedings and contested matters pending as of the Effective Date or specifically contemplated in this Plan to be filed in this court; (iv) whether the case should be dismissed or converted to one under Chapter 7; (v) any objections to claims; (vi) compromises of controversies under Fed. R. Bankr. Pro. 9019; (vii) compensation of professionals; and (viii) other questions regarding the interpretation and enforcement of the Plan.

## XI.  GENERAL PROVISIONS

**(a) <u>Effective Date of Plan</u>**.  The Effective Date of the Plan is the 28th day following the date of the entry of the order of confirmation, if no notice of appeal from that order has been filed.  If a notice of appeal has been filed, Debtor may waive the finality requirement and put the Plan into effect, unless the order confirming the Plan has been stayed.  If a stay of the confirmation order has been issued, the Effective Date will be the first day after that

CHAPTER 11 COMBINED PLAN & DISCLOSURE STATEMENT

Case: 17-30501    Doc# 150    Filed: 03/28/18    Entered: 03/28/18 22:30:17    Page 15 of 40

date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

**(b) Disputed Claim Reserve**. Debtor will create a reserve for disputed claims. Each time Debtor makes a distribution to the holders of allowed claims, Debtor will place into a reserve the amount that would have been distributed to the holders of disputed claims if such claims had been allowed in the full amount claimed. If a disputed claim becomes an allowed claim, Debtor shall immediately distribute to the claimant from the reserve an amount equal to all distributions due to date under the plan calculated using the amount of the allowed claim. Any funds no longer needed in reserve shall be returned to Debtor.

**(c) Cramdown**. Pursuant to section 1129(b) of the Bankruptcy Code, Debtor reserves the right to seek confirmation of the Plan despite the rejection of the Plan by one or more classes of creditors.

**(d) Severability**. If any provision in the Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

**(e) Governing Law**. Except to the extent a federal rule of decision or procedure applies, the laws of the State of California govern the Plan.

**(f) Lawsuits**.

Debtor believes that causes of action for fraudulent transfers, voidable preferences, or other claims for relief exist against the following parties:

| Party | Creditor Y/N | Nature of Claim | Amount of Claim | Will Debtor Prosecute Action? Y/N |
|---|---|---|---|---|
| Dakota Note | Y | Lender Liabiilty | $900,000 | Y |
| Cal Home Loans | Y | Damages/Avoidance of Lien | $315,000 | Y |

CHAPTER 11 COMBINED PLAN & DISCLOSURE STATEMENT

Case: 17-30501    Doc# 150    Filed: 03/28/18    Entered: 03/28/18 22:30:17    Page 16 of 40

| Party | Creditor Y/N | Nature of Claim | Amount of Claim | Will Debtor Prosecute Action? Y/N |
|-------|--------------|-----------------|-----------------|-----------------------------------|
| PSG Capital | Y | Damages | $6,000,000 | Y |
| IRS | Y | Avoidance of Lien | $1,900,000 | Y |
| FTB | Y | Avoidance of Lien | $6,000,000 | Y |

The Debtor has filed adversary proceedings against these parties and will continue to prosecute those claims. Each of the defendants is a claimed secured creditor. To the extent their liens are determined to be valid, the allowed amount of their claims will be paid as outlined in Section II above.

**(g) Notices**. Any notice to the Debtor shall be in writing, and will be deemed to have been given three days after the date sent by first-class mail, postage prepaid and addressed as follows:

BRUGNARA PROPERTIES VI, INC.
Attn: Kay Brugnara, President
224 Sea Cliff Avenue
San Francisco, CA 94121

**(h) Post-Confirmation United States Trustee Fees**. Following confirmation, Debtor shall continue to pay quarterly fees to the United States Trustee to the extent, and in the amounts, required by 28 U.S.C. § 1930(a)(6). So long as Debtor is required to make these payments, Debtor shall file with the court quarterly reports in the form specified by the United States Trustee for that purpose.

**(i) Deadline for § 1111(b) Election**. Creditors with an allowed secured claim can make a timely election under section 1111(b) no later than 14 days before the first date set for the hearing on confirmation of the Plan.

CHAPTER 11 COMBINED PLAN & DISCLOSURE STATEMENT

17

Dated: March 28, 2018                    BRUGNARA PROPERTIES VI, LLC


                                         By:__/s/ Kay Brugnara_____
                                         KAY BRUGNARA, Responsible Individual

Dated: March 28, 2018                    LAW OFFICE OF RUTH AUERBACH


                                         By:_Ruth Elin Auerbach_____
                                         RUTH ELIN AUERBACH,
                                         Attorney for Debtor

CHAPTER 11 COMBINED PLAN & DISCLOSURE STATEMENT

| Subject: | Fwd: LOAN APPROVAL**** Review Now |
|---|---|
| From: | Kay Brugnara (kaybrugnara@aol.com) |
| To: | attorneyruth@sbcglobal.net; |
| Date: | Thursday, March 15, 2018 12:17 PM |

Sent from my iPhone

Begin forwarded message: Hi Ruth,

Attached is the loan approval commitment for the $14M 1st TD as we discussed. Thanks
Kay

From: kaybrugnara@aol.com
Date: March 14, 2018 at 2:18:41 PM PDT
To: kaybrugnara@aol.com
Subject: Fwd: LOAN APPROVAL**** Review Now

-----Original Message-----
From: Marial Antonio <marial.cna@gmail.com>
To: kaybrugnara <kaybrugnara@aol.com>
Sent: Tue, Mar 13, 2018 6:21 pm
Subject: Fwd: LOAN APPROVAL**** Review Now

Marylou Antonio
Transaction Coordinator
415-828-9175 Fax 925-406-0897
Email: marial.cna@gmail.com
Website: www.cnaequitygroup.com

---------- Forwarded message ---------
From: FMC Lending <scenario@fundmortgagecapital.com>
Date: Thu, Mar 8, 2018, 5:20 PM
Subject: LOAN APPROVAL**** Review Now
To: <marial.cna@gmail.com>

Here is the loan approval for the deal you submitted. When do you need to close by? We have
allocated the funds from our mortgage pool and can close this deal very quickly. Please have
client initial page 1 loan program and sign the 2nd page. Please email it back to this email or
fax it to 415-358-4223. This is very time sensitive since the funds are blocked for a short time
only.

Please advise on timing.

Please note loan conditions will be satisfied after signed approval is returned.  If you have
already sent in conditions, we have them but it will not be reflected on this approval.

Please contact you Account Executive James for any questions.

Underwriting/Operations Department
2nd Floor
FMC Lending, Inc.
888-297-4440

\*-\*-\*-\*-\*-\*-\*-\*-\*-\*-\*-\*-\*-\*-\*-\*-\*-\*-\*-\*-\*-\*-\*-\*-\*-\*-\*-\*

Disclaimer: This email, including attachments, is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521, and is legally privileged and confidential. If you are not the addressee named above, you are hereby notified that any dissemination, distribution, copying or taking any action based upon this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately by reply email and delete this message and any attachments from your computer. All email sent to this address is subject to review by someone other than the recipient. Please contact FMC Lending, Inc. at any time if you would like to stop receiving future facsimile advertisements at this telephone number or email address. Please identify your facsimile telephone number or email address when you notify FMC Lending, Inc. Your telephone number or email address will be removed from our list within 10 business days. Emails are not contractual obligations of any sort. All contractual agreements must be fully executed, stand-alone documents. Thank you.

## Attachments

- 20881 Loan Approval.pdf (377.71KB)

# Conditional Loan Quote

**Borrowers:**            **Kay Brugnara**
                            **File #20881**

**Quote Date:**                     **3/8/2018**

**Loan Purpose:**              **Investment**

**Subject Property:**       **1st Trust Deed**    **224 Seacliff Avenue**
                                          **San Francisco CA**

**Loan Dates:**
     Quote Expiration Date                 **3/9/2018**
     Funding/Closing Deadline        **3/16/2018**

**SELECT & INITIAL LOAN PROGRAM BELOW:**

   **2-Year Term & Loan Amount**            **$14,000,000**
      <u>Amortized Payment</u>
        Fixed Interest Rate                 10.99%
        Lender Fee (% of Loan Amount)     2.00%
        Amortization Period               40
        Amortization Payment         **$129,849.61**    <_____ **Borrower Initials**

**Other Loan Terms:**

| | |
|---|---|
| **Prepayment Penalty (Fee):** | **first 6 months** |
| Fees & Escrow Disbursements: | **See Below** |
| Late Fee | **10.00%** |
| Grace Period | **10 days** |
| Default Rate | **Note Rate + 6%** |
| Junior Financing | **Permitted** |

**Lender Conditions/Approvals:**               **Prepared/Obtained By:**

| | | |
|---|---|---|
| Digital photos (**Appraisal JPEG's**): | Broker | **Required** |
|      Front yard, Rear yard, All interior rooms, kitchen and bathrooms | | |
| Loan Application (Each Borrower) | Broker | **CLEARED** |
| Credit Report | Broker | **CLEARED** |
| New Appraisal:  Desk Review | Broker | **Required** |
| Minimum **"AS IS"** Appraised Value: | | **$20,000,000** |
| Preliminary Title Report | Broker | **Required** |
| Verification of current zoning and General Plan | Lender | **Required** |
| Signed borrower authorization | Broker | **Required** |
| Purchase contract and all addendums | Broker | **N/A** |
| Rental agreement (if rented) | Broker | **Required** |

**Required Documents (Closing):**            **Prepared/Obtained By:**

| | | |
|---|---|---|
| State Disclosures  (Form 882) | Broker | **Required** |

1

Borrower  Initials:_____

Case: 17-30501     Doc# 150     Filed 11/11/... 1... 03/28/18 22:30:17     Page 21 of 40

EXHIBIT "1" Page 4 of 4

# Conditional Loan Quote

**Borrowers:**                          **Kay Brugnara**
                                        **File #20881**

**Quote Date:**                                    **3/8/2018**
   Executed Loan Quote                       Broker      **Required**
   Escrow Instructions                       Lender      **Required**
   Promissory Note                           Lender      **Required**
   Affidavit Regarding Loan Purpose          Lender      **Required**
   Agreement to Arrange Credit               Lender      **Required**
   Authorization to Provide Information       Escrow      **Required**
   Copy of Driver's License (each Borrower)   Escrow      **Required**
   Deed of Trust                             Escrow      **Required**
   Insurance Certificate                     Escrow      **Required**

**Escrow Disbursements:**
   Broker Points/Fees:                       **2.00%**
   Lender Fee (Underwriting)                 **$975.00**
   Lender Fee (Loan Docs)                    **$655.00**
   Lender Fee (Processing)                   **$890.00**
   Lender Fee (Funding Fee)                  **$585.00**
   Lender Fee (Wire)                         **$45.00**
   Credit Report (Lender)                    **$35.00**
   Property Inspection (Lender)              **$395.00**
   Escrow/Title                              **Borrower Pay**

**Acceptance By Borrower**

   By:_____      Date:_____

   Print Name:_____

**Acceptance By Broker**

   Print Name:_____

   By:_____      Date:_____

# APPRAISAL OF REAL PROPERTY



### LOCATED AT
224 Sea Cliff Avenue
San Francisco, CA 94121
Lot 001S  Block 1307

### FOR
Kay Brugnara
Owner

### OPINION OF VALUE
$20,000,000 (AS UPDATED/UPGRADED)

### AS OF
11/15/2017

### BY
David Wallace
Wallace & Associates

(650) 592-1382
wallaceandassociates@gmail.com

EXHIBIT "12" page 10 of 17

# Uniform Residential Appraisal Report

File # 304655

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| | | | | |
|---|---|---|---|---|
| Property Address 224 Sea Cliff Avenue | | City San Francisco | State CA | Zip Code 94121 |
| Borrower Brugnara Properties | Owner of Public Record Brugnara Properties | | County San Francisco | |

Legal Description Lot 001S Block 1307

| | | | |
|---|---|---|---|
| Assessor's Parcel # 1307-001S | | Tax Year 2017 | R.E. Taxes $ 103,420 |
| Neighborhood Name Sea Cliff | | Map Reference 5-A5 | Census Tract 0428.00/2 |
| Occupant ☒ Owner ☐ Tenant ☐ Vacant | Special Assessments $ | ☐ PUD HOA $ NA | ☐ per year ☐ per month |
| Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe) | | | |
| Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe) Estimate Current Market Value | | | |
| Lender/Client Kay Brugnara | Address 224 Sea Cliff - San Francisco - California 94121 | | |

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☐ Yes ☒ No

Report data source(s) used, offering price(s), and date(s). MLS/Owner

☐ I ☐ did ☐ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed. NA

Contract Price $ NA Date of Contract NA Is the property seller the owner of public record? ☐ Yes ☐ No Data Source(s)

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☐ No
If Yes, report the total dollar amount and describe the items to be paid. NA

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | One-Unit Housing Trends | One-Unit Housing | Present Land Use % |
|---|---|---|---|
| Location ☒ Urban ☐ Suburban ☐ Rural | Property Values ☒ Increasing ☐ Stable ☐ Declining | PRICE AGE | One-Unit 100 % |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | $ (000) (yrs) | 2-4 Unit % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | Marketing Time ☐ Under 3 mths ☒ 3-6 mths ☒ Over 6 mos | 16M Low 25 | Multi-Family % |
| Neighborhood Boundaries Presedio/north: Lake District/east; Outer Richmond;west; Central | | 22M High 100+ | Commercial % |
| Richmond/south. | | NA Pred. 100 | Other % |

Neighborhood Description Sea aera evisulcxe na si ffiiCLow density urban. Inner community of ultra high-end homes on the cliffs of Baker Beach. The subject is one of only 12 homes on the cliff.. Prestigious locale of luxury quality homes being well maintained and gentrified. Panoramic views of the Golden gate Bridge, Marin Headlands, cliffs and beaches. Subject area homes with great desirablity due to quality of construction, good

Market Conditions (including support for the above conclusions) **prices. The subject community has had few sales over the past 7 years. Said sales vary in price between 11M and 18M. Supply and demand appear to be in balance. Interest rates/financing terms are favorable at this time but sometimes difficult to obtain. Sea Cliff is commonly known as one of the most prestigious locales in San Francisco.

| | | | |
|---|---|---|---|
| Dimensions Irregular | Area 8,160 | Shape Irregular | View Panoramic/Ocean |
| Specific Zoning Classification RH1D | Zoning Description Detached Single Family Dwelling | | |
| Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe) | | | |

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☒ | | Street | ☒ | |
| Gas | ☒ | | Sanitary Sewer | ☒ | | Alley NA | | |

FEMA Special Flood Hazard Area ☐ Yes ☒ No FEMA Flood Zone N FEMA Map # 0602980001N FEMA Map Date NA

Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No If Yes, describe
None Known. Please see a title report for any easements of record.

| General Description | | Foundation | | Exterior Description materials/condition | | Interior materials/condition | |
|---|---|---|---|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | ☒ Concrete Slab ☒ Crawl Space | | Foundation Walls Concrete | | Floors Hardwood | |
| # of Stories 4 | ☐ Full Basement ☐ Partial Basement | | Exterior Walls Wood/Stucco | | Walls Plaster | |
| Type ☒ Det. ☐ Att. ☐ S-Det/End Unit | Basement Area 0 sq.ft. | | Roof Surface Tile | | Trim/Finish Good | |
| ☒ Existing ☐ Proposed ☐ Under Const. | Basement Finish NA % | | Gutters & Downspouts Metal | | Bath Floor Tile/Composition | |
| Design (Style) Mediterranean | ☐ Outside Entry/Exit ☐ Sump Pump | | Window Type Original & Dbl Insul. | | Bath Wainscot Tile | |
| Year Built 1926 | Evidence of ☐ Infestation | | Storm Sash/Insulated NA | | Car Storage ☐ None | |
| Effective Age (Yrs) 25 After | ☐ Dampness ☐ Settlement | | Screens Partial | | ☒ Driveway # of Cars 2+ | |
| Attic ☒ None | Heating ☒ FWA ☐ HWBB ☐ Radiant | | Amenities ☐ Woodstove(s) # | | Driveway Surface Concrete | |
| ☐ Drop Stair ☐ Stairs | ☐ Other Fuel Gas | | ☒ Fireplace(s) # 2 ☒ Fence Wall | | ☒ Garage # of Cars 2 S/S | |
| ☐ Floor ☐ Scuttle | Cooling ☐ Central Air Conditioning | | ☒ Patio/Deck ☐ Porch | | ☐ Carport # of Cars | |
| ☐ Finished ☐ Heated | ☐ Individual ☐ Other | | ☐ Pool ☐ Other | | ☒ Att. ☐ Det. ☐ Built-in | |

Appliances ☒ Refrigerator ☒ Range/Oven ☒ Dishwasher ☒ Disposal ☐ Microwave ☒ Washer/Dryer ☐ Other (describe)

Finished area above grade contains: 12 Rooms 7 Bedrooms 5 Bath(s) 6,600 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.). SEE PAGE 3 OF THIS REPORT (Living area size includes ground level space). CITY RECORDS LIST THE SUBJECT AS HAVING 12 ROOMS, 7 BEDROOMS, 5 BATHS AND 5,552-SF - WHEN MYSELF AND A LOCAL REALTOR ***

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.). *** MEASURED THE SUBJECT, THE SIZE OF THE LIVING AREA MEASURED APPROXIMATELY 6,600/SF. CITY RECORDS ON OLDER HOMES ARE MANY TIMES INCORRECT AND THEREFORE FOR PURPOSES OF THIS APPRAISAL 6,600 SQUARE FEET WILL BE USED AS THE SUBJECT'S LIVING AREA.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No If Yes, describe
None known or observed

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No If No, describe

# Uniform Residential Appraisal Report

File # 304655

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| There are | 0 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 0 | | | | to $ 0 | . |
| There are | 0 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 0 | | | | to $ 0 | |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 224 Sea Cliff Avenue | 70 27th Avenue | | 164 Sea Cliff Avenue | | 178 Sea Cliff Avenue | |
| | San Francisco, CA 94121 | San Francisco, CA 94121 | | San Francisco, CA 94121 | | San Francisco, CA 94121 | |
| Proximity to Subject | | 0.10 miles SE | | 0.05 miles E | | 0.03 miles E | |
| Sale Price | $ NA | | $ 16,100,000 | | $ 17,800,000 | | $ 11,000,000 |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 3650.79 sq.ft. | | $ 2296.18 sq.ft. | | $ 3068.34 sq.ft. | |
| Data Source(s) | | MLS/Fidelity Title/Internet | | MLS/Fidelity Title/Internet | | MLS/Fidelity Title/Internet | |
| Verification Source(s) | | MLS#450884 | | MLS#450115 | | MLS#430974 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing Concessions | | Unknown | | Unknown | | Unknown | |
| Date of Sale/Time | | 1/2017 | | 11/2016 | | 4/2015 | |
| Location | Sea Cliff | Sea Cliff | | Sea Cliff | | Sea Cliff | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 8,150/SF | 3,057/SF | | 8,352/SF | | 7,226/SF | |
| View | Panoramic/Ocea | Similar | | Similar | | Similar | |
| Design (Style) | Mediterranean | Edwardian | | Traditional | | Traditional | |
| Quality of Construction | V. Good | Similar | | Similar | | Similar | |
| Actual Age | 87 | 97 | | 97 | | 100+ | |
| Condition | Average | V. Good | | V.Good | | Poor-Fair | |
| Above Grade | Total 12 Bdrms. 7 Baths 5 | Total 10 Bdrms. 4 Baths 3.5 | | Total 13 Bdrms. 6 Baths 5.5 | | Total 9 Bdrms. 5 Baths 2 | |
| Room Count | | | | | | | |
| Gross Living Area | 6,600 sq.ft. | 4,410 sq.ft. | | 7,752 sq.ft. | | 3,585 sq.ft. | |
| Basement & Finished Rooms Below Grade | 0 Finished | Similar | | Similar | | Similar | |
| Functional Utility | Good | Good | | Good | | Good | |
| Heating/Cooling | FAU/NA | FAU/NA | | Radiant/NA | | FAU/NA | |
| Energy Efficient Items | Minimal | Most | | Most | | Minimal | |
| Garage/Carport | 2 S/S | Similar | | 3 Garage | | Similar | |
| Porch/Patio/Deck | Patio/Stairs | Similar | | Similar | | Similar | |
| Fireplaces | 2 | 2 | | 2 | | 2 | |
| Elevator | 4 Stops | Unknown | | Unknown | | Unknown | |
| Private Beach | Yes | No | | No | | No | |
| Net Adjustment (Total) | | ☐+ ☐- $ | | ☐+ ☐- $ | | ☐+ ☐- $ | |
| Adjusted Sale Price | | Net Adj. % | | Net Adj. % | | Net Adj. % | |
| of Comparables | | Gross Adj. % $ | 16,100,000 | Gross Adj. % $ | 17,800,000 | Gross Adj. % $ | 11,000,000 |

☐ ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s) Fidelity Title Company
My research ☐ did ☐ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s) MLS/Fidelity Title
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | NA | NA | NA | NA |
| Price of Prior Sale/Transfer | NA | NA | NA | NA |
| Data Source(s) | Fidelity Title Company | Fidelity Title Company | Fidelity Title Company | Fidelity Title Company |
| Effective Date of Data Source(s) | 11/2017 | 11/2017 | 11/2017 | 11/2017 |

Analysis of prior sale or transfer history of the subject property and comparable sales    Subject and all comparables have sold only as listed above.

Summary of Sales Comparison Approach    The comparables sold between $2,296 and $3,651 per square foot. The median $/SF approximates $3,000. The subject has the only path down to the water. The subject and all of the comparables are located in the Sea Cliff District. Data sources included the MLS, Chicago Title Company, Fidelity Title Company, the Internet. The subject requires an estimated $200,000 in work and updating to bring its quality and condition up to the standards set by the comparables except for Comp #3 which was purchased as a Fixer-Upper and therefore set the low end of the price/SF range. It is the opinion of the appraiser that the estimated most probable market value of the subject in a good, updated, functional condition would approximate $3,100 per square foot of living area. Therefore: $3,100/SF X 6,600/SF = $20,460,000. The amount of $200,000 must be subtracted from the finished condition of the subject to obtain the subject's "as is" market value. $20,460,000 less $200,000 = $ 20,260,000 (Round) $20,000,000.
Indicated Value by Sales Comparison Approach $ 20,000,000

Indicated Value by Sales Comparison Approach $ 20,000,000 Cost Approach (if developed) $ 20,368,750 Income Approach (if developed) $ NA
The subject is located in an inner neighborhood commonly known as "Sea Cliff". The subject location is second to none in San Francisco due to its location at lands end and the exclusive bay/ocean/Golden Gate Bridge views. Please see page 3 of this appraisal for further comments concerning the subject market value.
This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair: PLEASE SEE PAGE 3 OF THIS REPORT.
Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 20,000,000 , as of 11/15/2017 , which is the date of inspection and the effective date of this appraisal.

Freddie Mac Form 70 March 2005    Page 2 of 6    Fannie Mae Form 1004 March 2005

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

# Uniform Residential Appraisal Report

File # 304655

| FEATURE | SUBJECT | COMPARABLE SALE # 4 | | COMPARABLE SALE # 5 | | COMPARABLE SALE #6 | |
|---|---|---|---|---|---|---|---|
| Address | 224 Sea Cliff Avenue | 320 Sea Cliff Avenue | | | | | |
| | San Francisco, CA 94121 | San Francisco, CA 94121 | | | | | |
| Proximity to Subject | | 0.08 miles SW | | | | | |
| Sale Price | $ NA | $ 14,000,000 | | $ | | $ | |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 2692.31 sq.ft. | | $ sq.ft. | | $ sq.ft. | |
| Data Source(s) | | MLS/Fidelity Title/Internet | | | | | |
| Verification Source(s) | | MLS#450326 | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | Unknown | | | | | |
| Concessions | | | | | | | |
| Date of Sale/Time | | ACTIVE | | | | | |
| Location | Sea Cliff | Sea Cliff | | | | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | | | | |
| Site | 8,150/SF | | | | | | |
| View | Panoramic/Ocea | Panoramic/Ocea | | | | | |
| Design (Style) | Mediterranean | Mediterranean | | | | | |
| Quality of Construction | V. Good | Luxury | | | | | |
| Actual Age | 87 | 90 | | | | | |
| Condition | Average | Luxury | | | | | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 12  7  5 | 11  4  4.5 | | | | | |
| Gross Living Area | 6,600 sq.ft. | 5,200 sq.ft. | | sq.ft. | | sq.ft. | |
| Basement & Finished | 0 | Similar | | | | | |
| Rooms Below Grade | Finished | | | | | | |
| Functional Utility | Good | Good | | | | | |
| Heating/Cooling | FAU/NA | FAU/NA | | | | | |
| Energy Efficient Items | Minimal | Partial | | | | | |
| Garage/Carport | 2 S/S | 2 S/S | | | | | |
| Porch/Patio/Deck | Patio/Stairs | Similar | | | | | |
| Fireplaces | 2 | 2 | | | | | |
| Elevator | 4 Stops | Similar | | | | | |
| Private Beach | Yes | No | | | | | |
| Net Adjustment (Total) | | ☐ + ☐ - | $ | ☐ + ☐ - | $ | ☐ + ☐ - | $ |
| Adjusted Sale Price | | Net Adj. % | | Net Adj. % | | Net Adj. % | |
| of Comparables | | Gross Adj. % | $ 14,000,000 | Gross Adj. % | $ | Gross Adj. % | $ |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 4 | COMPARABLE SALE # 5 | COMPARABLE SALE # 6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | NA | NA | | |
| Price of Prior Sale/Transfer | NA | NA | | |
| Data Source(s) | Fidelity Title Company | Fidelity Title Company | | |
| Effective Date of Data Source(s) | 11/2017 | 11/2017 | | |

Analysis of prior sale or transfer history of the subject property and comparable sales

Analysis/Comments

Freddie Mac Form 70 March 2005

Fannie Mae Form 1004 March 2005

Form 1004.(AC) — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

# Uniform Residential Appraisal Report

File # 304655

THE SUBJECT PROPERTY IS LOCATED IN THE SEA CLIFF DISTRICT OF SAN FRANCISCO. SEA CLIFF HOMES ARE TYPICALLY GRAND, DETACHED AND WITH LAWNS AND PROFESSIONAL LANDSCAPING. THIS LOCALE IS COMPRISED OF UPPER AND UPPER-MIDDLE CLASS FAMILIES. THE STYLE OF ARCHITECTURE IS PREDOMINATELY MEDITERRANEAN/TRADITIONAL AND WITH A FEW CONTEMPORARY STYLES. SEA CLIFF IS HOME OR WAS HOME TO WELL KNOWN PERSONALITIES SUCH AS ROBIN WILLIAMS, LINDA RONSTADT, GAVIN NEWSOM, SALESFORCE CEO MARK BENIOFF AMONG OTHERS. THIS AREA HAS HISTORICALLY SHOWN STRONG MARKET APPEAL PRIMARILY DUE TO THE QUALITY OF CONSTRUCTION MATERIALS, THE OVERALL VERY GOOD CONDITION OF PROPERTIES, THE GOLDEN GATE BRIDGE/BAKERS BEACH/MARIN HEADLANDS, WATER VIEW AMENITIES AND THE STRONG RESALE PRICES..

THE SUBJECT IS A FOUR STORY MEDITERRANEAN STYLE HOME WITH AN ELEVATOR AND 12 ROOMS, 7 BEDROOMS, AND 5.5 BATHS. AT ONE TIME IT WAS A GRAND ESTATE BUT IS PRESENTLY SHOWING THE EFFECTS OF DEFERRED MAINTENANCE AND A LACK OF GENTRIFICATION.. ITEMS SUCH AS MILDEW REMOVAL, RESTORING HARDWOOD FLOORS, MAKING ELEVATOR FUNCTIONAL, EXTERIOR PAINTING, ADDING NEW APPLIANCES/FIXTURES IS REQUIRED. THE ESTIMATED COST TO CURE THE EXISTING DEFICIENCIES APPROXIMATES $200,000. THIS IS THE AMOUNT THAT IS ESTIMATED TO BRING THE SUBJECT TO A FUNCTIONAL CONDITION THAT WOULD ALLOW THE SUBJECT TO COMPETE WITH HOMES IN THE SEA CLIFF MARKET. THIS AMOUNT WILL BE SUBTRACTED FROM THE SUBJECT'S ESTIMATED MARKET VALUE "AS IF" IN A GOOD CONDITION WHICH WILL THEN DETERMINE THE SUBJECT'S " AS IS" MOST PROBABLE MARKET VALUE.

THE SUBJECT WAS BUILT WITH 3 FOOT THICK WALLS THROUGHOUT THE HOME. THE KITCHEN IS OLDER BUT WITH GRANITE COUNTERS AND STAINLESS STEEL GAS RANGE. THE TOP (4TH) FLOOR FEATURES NATURAL LIGHT, PANORAMIC VIEWS, EXPOSED WOOD BEAM CEILINGS. THE VIEWS ARE SPECTCULAR. ALL FLOORS OF THE HOME HAVE A VIEW AMENITY TO THE REAR. AS PER THE OWNER A PATH TO A PRIVATE BEACH WAS CONSTRUCTED AT A COST OF $3,000,000 (SEE PHOTO SECTION OF THIS REPORT).

THE SEA CLIFF DISTRICT CONTAINS A TOTAL OF AROUND 100 HOMES, HOWEVER, ONLY 15 (M/L) ARE AT THE WATERS EDGE. THIS FACT INCREASES THE SUBJECT VALUE DUE TO SCARCITY. ONLY A FEW OF THE 15 HOMES HAVE SOLD IN RECENT YEARS. THE SUBJECT IS CONSIDERED ONE OF THE HIGHEST VALUED HOMES IN SAN FRANCISCO, PRIMARILY DUE ITS LOCATION. DATA SOURCES INCLUDED FIDELITY TITLE COMPANY, CHICAGO TITLE COMPANY, THE SAN FRANCISCO MULTIPLE LISTING SERVICE, THE INTERNET. THE COMPS SELECTED MOSTLY HAD OLDER SALE DATES THAN DESIRED, HOWEVER, BECAUSE OF THE CURRENT STRONG MARKET AND PRICE INCREASES OVER THE YEARS THEY ARE STILL CONSIDERED RELEVANT.

THE COMPARABLES USED IN THE REPORT ARE CONSIDERED THE MOST RECENT, PROXIMATE AND OVERALL RELEVANT THAT WERE AVAILABLE FOR COMPARISON PURPOSES. ALL OF THE COMARABLES USED IN THIS REPORT ARE LOCATED IN THE SEA CLIFF DISTRICT. BECAUSE OF THE LARGE DIFFERENCES BETWEEN THE SUBJECT AND THE COMPARABLES QUALITATIVE AND QUANTATATIVE ADJUSTMENTS ARE NOT CONSIDERED MEANINGFUL. THEREFORE, AS IS COMMON IN SAN FRANCISCO, THE DOLLAR/SF OF LIVING AREA IS USED TO DETERMINE THE SUBJECT'S MOST PROBABLE MARKET VALUE.

THE APPRAISED VALUE IS PRIMARILY BASED ON THE SUBJECT HAVING A LEGAL 6,600 SF OF LIVING AREA AND BEING IN A GOOD, UPDATED, UPGRADED FUNCTIONAL CONDITION.

## COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)     Land-to-building ratio typical of area. Cost Information via the Marshall Valuation Cost Manual & tempered by the appraiser's experience. Local value via the extraction method. Physical depreciation estimated via the age/life method: 30 Year Effective Age/100 year economic life = 30% physical depreciation. No functional or locational obsolescence observed. This reflects the $200,000 taken for needed repairs.

| ESTIMATED ☐ REPRODUCTION OR ☒ REPLACEMENT COST NEW | OPINION OF SITE VALUE | | | | =$ 13,000,000 |
|---|---|---|---|---|---|
| Source of cost data  Marshall Valuation & Appraiser's experience. | DWELLING | 6,600 Sq.Ft. @ $ | 550.00 | =$ | 3,630,000 |
| Quality rating from cost service  V.Good  Effective date of cost data  6/2015 | | 0 Sq.Ft. @ $ | | =$ | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | | | | =$ | |
| Land value via the extraction method.  THE COST APPROACH IS | Garage/Carport | 780 Sq.Ft. @ $ | 250.00 | =$ | 195,000 |
| COMPLETED FOR INSURANCE PURPOSES ONLY. | Total Estimate of Cost-New | | | =$ | 3,825,000 |
| | Less | Physical | Functional | External | |
| | Depreciation | 956,250 | | | =$( 956,250) |
| | Depreciated Cost of Improvements | | | =$ | 2,868,750 |
| | "As-is" Value of Site Improvements | | | =$ | 4,500,000 |
| Estimated Remaining Economic Life (HUD and VA only)      75 Years | INDICATED VALUE BY COST APPROACH | | | =$ | 20,368,750 |

## INCOME APPROACH TO VALUE (not required by Fannie Mae)

| Estimated Monthly Market Rent $ | X Gross Rent Multiplier | = $ | NA | Indicated Value by Income Approach |
|---|---|---|---|---|

Summary of Income Approach (including support for market rent and GRM)

## PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)?  ☐ Yes  ☐ No   Unit type(s)  ☐ Detached  ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project

| Total number of phases | Total number of units | Total number of units sold |
|---|---|---|
| Total number of units rented | Total number of units for sale | Data source(s) |

Was the project created by the conversion of existing building(s) into a PUD?  ☐ Yes   No  If Yes, date of conversion.

Does the project contain any multi-dwelling units?  ☐ Yes  ☐ No  Data Source

Are the units, common elements, and recreation facilities complete?  ☐ Yes   No  If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association?  ☐ Yes   No  If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

Freddie Mac Form 70 March 2005                    Page 3 of 6                    Fannie Mae Form 1004 March 2005

# Uniform Residential Appraisal Report    File # 304655

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:**  The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:**  The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:**  The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:**  The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:**  The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

## Uniform Residential Appraisal Report    File # 304655

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

# Uniform Residential Appraisal Report     File # 304655

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name  David Wallace | Name |
| Company Name   Wallace & Associates | Company Name |
| Company Address   P.O.Box 5151 - Belmont - CA 94002 | Company Address |
| Telephone Number  (650) 592-1382 | Telephone Number |
| Email Address  wallaceandassociates@gmail.com | Email Address |
| Date of Signature and Report   11/20/2017 | Date of Signature |
| Effective Date of Appraisal   11/15/2017 | State Certification # |
| State Certification # | or State License # |
| or State License # | State |
| or Other (describe) _____ State # | Expiration Date of Certification or License |
| State | |
| Expiration Date of Certification or License | SUBJECT PROPERTY |

ADDRESS OF PROPERTY APPRAISED
224 Sea Cliff Avenue
San Francisco, CA 94121
APPRAISED VALUE OF SUBJECT PROPERTY $     20,000,000
LENDER/CLIENT
Name
Company Name   Kay Brugnara
Company Address   224 Sea Cliff - San Francisco - California 94121
Email Address

☐ Did not inspect subject property
☐ Did inspect exterior of subject property from street
　　Date of Inspection
☐ Did inspect interior and exterior of subject property
　　Date of Inspection

COMPARABLE SALES

☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
　　Date of Inspection

Freddie Mac Form 70 March 2005                Page 6 of 6                Fannie Mae Form 1004 March 2005

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

## Subject Photo Page

| Borrower/Client | Brugnara Properties | | | | |
|---|---|---|---|---|---|
| Property Address | 224 Sea Cliff Avenue | | | | |
| City | San Francisco | County San Francisco | State CA | Zip Code 94121 | |
| Lender | Kay Brugnara | | | | |



### Subject Front

224 Sea Cliff Avenue
| | |
|---|---|
| Sales Price | NA |
| G.L.A. | 6,600 |
| Tot. Rooms | 12 |
| Tot. Bedrms. | 7 |
| Tot. Bathrms. | 5 |
| Location | Sea Cliff |
| View | Panoramic/Ocean |
| Site | 8,150/SF |
| Quality | V. Good |
| Age | 87 |



### Subject Rear



### Subject Street



## Photograph Addendum

| Borrower/Client | Brugnara Properties | | | |
|---|---|---|---|---|
| Property Address | 224 Sea Cliff Avenue | | | |
| City | San Francisco | County San Francisco | State CA | Zip Code 94121 |
| Lender | Kay Brugnara | | | |




**Living Room**                    **Dining Room**




**Half Bath**                    **Kitchen**




**Family Room**                    **Main Entry**

Form PICSIX2 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

EXHIBIT 2 — page 11 of 17

## Photograph Addendum

| Borrower/Client | Brugnara Properties | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 224 Sea Cliff Avenue | | | | | |
| City | San Francisco | County | San Francisco | State | CA | Zip Code 94121 |
| Lender | Kay Brugnara | | | | | |




**Bath**

**MBR**
**Bath at Left Rear**




**Bath**

**Bedroom**




**Top Floor**
**Panoramic View Amenity**

**One of Three Balconies**

Form PICSIX2 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

# Photograph Addendum

| Borrower/Client | Brugnara Properties | | | |
|---|---|---|---|---|
| Property Address | 224 Sea Cliff Avenue | | | |
| City | San Francisco | County San Francisco | State CA | Zip Code 94121 |
| Lender | Kay Brugnara | | | |



Walkway to Beach/Rear of House



View Amenity



Lowest Floor



Front Balcony



Beach at Rear of House



View Amenity

Form PIC6_LT — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

## Location Map

| Borrower/Client | Brugnara Properties | | | |
|---|---|---|---|---|
| Property Address | 224 Sea Cliff Avenue | | | |
| City | San Francisco | County San Francisco | State CA | Zip Code 94121 |
| Lender | Kay Brugnara | | | |



Form MAP.LOC — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

# Comparable Photo Page

| Borrower/Client | Brugnara Properties | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 224 Sea Cliff Avenue | | | | | |
| City | San Francisco | County | San Francisco | State | CA | Zip Code 94121 |
| Lender | Kay Brugnara | | | | | |



### Comparable 1

70 27th Avenue
| | |
|---|---|
| Prox. to Subj. | 0.10 miles SE |
| Sales Price | 16,100,000 |
| G.L.A. | 4,410 |
| Tot. Rooms | 10 |
| Tot. Bedrms. | 4 |
| Tot. Bathrms. | 3.5 |
| Location | Sea Cliff |
| View | Similar |
| Site | 3,057/SF |
| Quality | Similar |
| Age | 97 |



### Comparable 2

164 Sea Cliff Avenue
| | |
|---|---|
| Prox. to Subj. | 0.05 miles E |
| Sales Price | 17,800,000 |
| G.L.A. | 7,752 |
| Tot. Rooms | 13 |
| Tot. Bedrms. | 6 |
| Tot. Bathrms. | 5.5 |
| Location | Sea Cliff |
| View | Similar |
| Site | 8,352/SF |
| Quality | Similar |
| Age | 97 |



### Comparable 3

178 Sea Cliff Avenue
| | |
|---|---|
| Prox. to Subj. | 0.03 miles E |
| Sales Price | 11,000,000 |
| G.L.A. | 3,585 |
| Tot. Rooms | 9 |
| Tot. Bedrms. | 5 |
| Tot. Bathrms. | 2 |
| Location | Sea Cliff |
| View | Similar |
| Site | 7,226/SF |
| Quality | Similar |
| Age | 100+ |

# Comparable Photo Page

| Borrower/Client | Brugnara Properties | | | | |
|---|---|---|---|---|---|
| Property Address | 224 Sea Cliff Avenue | | | | |
| City | San Francisco | County San Francisco | | State CA | Zip Code 94121 |
| Lender | Kay Brugnara | | | | |



### Comparable 4

320 Sea Cliff Avenue

### Comparable 5

### Comparable 6

# Plat Map

| Borrower/Client | Brugnara Properties | | | | |
|---|---|---|---|---|---|
| Property Address | 224 Sea Cliff Avenue | | | | |
| City | San Francisco | County | San Francisco | State | CA | Zip Code | 94121 |
| Lender | Kay Brugnara | | | | |



EXHIBIT 25   p 16 of 17

APPRAISAL QUALIFICATIONS * DAVID WALLACE * PRINCIPAL WALLACE & ASSOCIATES
P.O.BOX 5151 * BELMONT * CALIFORNIA * 94002 * 650-592-1382 (OFFICE)
650-245-0900 (CELL) * wallaceandassociates@gmail.com

EDUCATION:

B. S Degree * California State University at Turlock * 1968

OREA approved courses successfully: Multiple Residential Appraisal; Advanced
Capitalization Techniques; Valuation of Leases & Leasehold Interests;
Analyziing & Adjusting for Financing Differences; Standards & Ethics;
Narrative Report Writing; URAR/FIRREA/USPAP Requirements; Practical Overview
of Evaluations and Other Limited Scope Assignments; Perspectives on 2-4 Unit
Appraisals; California Laws & Regulations.

Qualified as an Expert Witness in San Francisco, San Mateo & Santa Clara
Counties...

Related Work Experience:

| | |
|---|---|
| 5/1973 - 2/1983 | Asst Vice President - Appraiser/Chief Appraiser - Bayview Federal Bank - Duties included the appraisal of all types of properties in Northeren California |
| 2/1985 - 5/1986 | Asst Vice President - California Federal Bank - Responsible for all appraisals/ appraisal reviews in Northern California and Nevada |
| 5/1986 - 9/1993 | Review Appraiser - Security Pacific Bank - Bank of America - Beneficial Finance |
| 9/1993 - 5/2002 | Commercial/Industrial/Apartment Building Appraisals in the San Francisco Bay Area - Beneficial Finance - Wells Fargo Bank - Brokerage Firms - Lawyers - CPA's |
| Present | Principal Wallace & Associates - all types of properties - main clients include Saxe Mortgage - Red Tower Capital - Equity Bridge Loans - American Private Money Group - CNA Equity Group - Capital Funding - CME Funding California Real Estate Loans - GCA Equity Partners - FMC Lending - SSA Capital Consultants - Oakland Development Group; etc. |

APPRAISAL ASSIGNMENTS COMPLETED
--------------------------------

Single Family Dwellings; residential condominiums; TIC Units;
multi-residential properties. Commercial properties including shopping
centers; office buildings; mixed-use properties; office condos; motel/hotels;
strip retail properties; medical/dental properties & clinics; service
stations; mini-markets; car wash properties; industrial properties; lofts; R &
D buildings; special-purpose properties; trailer parks - auto sale facilities;
hospital/convalescent homes; residential care facilities; tennis clubs;
religious properties; subdivision feasibility; C & I vacant land.

# BRUGNARA PROPERTIES VI, A CALIFORNIA CORPORATION

## CORPORATE RESOLUTION

On this date, January 2, 2010, Kay Brugnara was appointed President and Secretary of Brugnara Properties VI, A California Corporation ("Brugnara Properties VI") by its current President and Secretary Luke Brugnara. Luke Brugnara immediately steps down as President and Secretary of Brugnara Properties VI, and shall no longer have any responsibilities, duties, or association with Brugnara Properties VI as an officer, director, or shareholder. This appointment shall be effective immediately on this date, January 2, 2010, at 12:00 noon.

Kay Brugnara shall be compensated TWO HUNDRED THOUSAND DOLLARS ($200,000.00US) a year salary as compensation for her duties as President and Secretary of Brugnara Properties VI. This salary amount shall be fixed for a period of TEN (10) years. This salary shall be paid to Kay Brugnara in the form of rent credit at Brugnara Properties VI 224 Sea Cliff Avenue, San Francisco, for a term of TEN (10) years, commencing January 2, 2010, and expiring January 2, 2020 ("rent credit"), for her acceptance of this appointment as President and Secretary of Brugnara Properties VI and the accompanying duties, liabilities and responsibilities thereof; and as acceptance of this rent credit as payment in full of her salary as President and Secretary of Brugnara Properties VI during this time period. The rent at 224 Sea Cliff Avenue, San Francisco, for this period, January 2, 2010 through January 2, 2020, shall be fixed at TWO HUNDRED THOUSAND DOLLARS ($200,000.00US) a year, and shall not be subject to increase or reduction. If Kay Brugnara's position as President and/or Secretary of Brugnara Properties VI ends at any time during this TEN (10) year period, Kay Brugnara shall retain the full TEN (10) year rent credit as compensation-in-full and severance payment for acceptance of the duties, liabilities and responsibilities as President and Secretary of Brugnara Properties VI for the time period that she was its President and Secretary.

By signing this Corporate Resolution, Kay Brugnara accepts the duties, liabilities and responsibilities as President and Secretary of Brugnara Properties VI commencing immediately forthwith, on this date, January 2, 2010.


_____
Luke Brugnara, President
Brugnara Properties VI

_____
Luke Brugnara, Secretary
Brugnara Properties VI

_____
Kay Brugnara

Date 01/02/2010

Date 01/02/2010

Date 01/02/2010

EXHIBIT 3